IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Gamal Jones, )<br>    Petitioner, )<br>)<br>v. )<br>)<br>J. Andrews, )<br>    Respondent. ) | 1:20cv251 (CMH/TCB) |

MEMORANDUM OPINION

Federal inmate Gamal Jones ("Jones" or "petitioner") filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus alleging that the Bureau of Prisons ("BOP") violated his due process rights by failing to provide him with a copy of a Discipline Hearing Officer's ("DHO") report in a timely fashion following a hearing, which resulted in his administrative appeal being dismissed. Respondent filed a motion to dismiss [Dkt. No. 9], with a brief in support and exhibits, and provided petitioner with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 9-1]. For the reasons stated below, respondent's motion to dismiss shall be granted, and the underlying petition dismissed.

I. Background[1]

On June 27, 2019, petitioner was charged with a violation of BOP Disciplinary Code 199, most like 108 – disruptive conduct (greatest) most like possession of a hazardous tool (cellphone), respectively, for conduct occurring on April 25, 2019. Dkt. No. 10-1 at 3. Section 11 of the Incident Report states that on April 25, 2019 a black cellphone was recovered from a trash can in an upstairs bathroom at FCI-Petersburg's Delaware Hall and submitted for examination to the Forensic Laboratory. The Forensic Laboratory issued a report on June 27,

---

[1] Jones is presently detained at FCI-Petersburg and has a release date of July 17, 2022. Dkt. No. 10 at 2.

2019, and the Forensic Laboratory's examination determined that "on April 25, 2019, at 0234 a.m., phone number [xxx-xxx-xxxx] was contacted via text message.... four times between 2:34 a.m. and 3:18 a.m." Dkt. No. 10-1 at 12. The investigation established that the identified number belonged to a friend of Jones, Jones was the only BOP inmate linked to the number, and that Jones resided in Delaware Hall on April 25, 2019. Id. In response to the charge, Jones stated he "never had the phone," "never called that number from a cellphone," and that another inmate had asked him to put the number on his list. Id. at 13. The charge was reviewed, served on Jones on June 27, 2019, and then referred to the Unit Discipline Committee ("UDC") for a hearing on June 29, 2019.

At the UDC hearing, Jones stated that the charge was "false," and that he "had done nothing wrong." Id. at 14. Jones was advised of his rights and did not request any witnesses be interviewed or the assistance of a staff representative. Id. Due to the severity of the incident, the UDC referred the matter to the DHO for further hearing. Id. at 13. At the end of the UDC hearing, Jones was served with and signed a Notice of Discipline Hearing Form. The form indicated he had not requested a staff representative for the DHO hearing and had also not requested any witnesses for the DHO hearing. Id. at 16.

At the DHO hearing on July 29, 2019, Jones admitted that he had received a copy of the relevant incident report, that he understood his rights, and then he admitted to the charge stating he was "guilty that's my number on the phone." Id. at 20. The DHO's report ("Report") relied upon the Forensic Laboratory report, the Incident Report, photographs of the cellphone, and Jones' admission that he used the cellphone, and that the number found on the cell phone was on Jones' "phone list." Id. The DHO found Jones had violated Code 199 on April 25, 2019 and at the conclusion of the hearing imposed the following administrative sanctions: (1) disallowance of forty-one days of good conduct time ("GCT"), (2) six months loss of telephone privileges, and (3) sixty days loss of commissary privileges. Id. at 22. Jones attempted to appeal the DHO's

decision, but his appeals were rejected because Jones did not include a copy of the DHO's report to file with his appeal. Dkt. Nos. 1-2 at 4, 8, 20, and 12.

Jones filed the instant § 2241 petition on February 20, 2020. Dkt. No. 1 at 17. The DHO report, dated June 17, 2020, was delivered to Jones approximately four months later, on June 19, 2020. Dkt. 10-1 at 23. The delay in completing the DHO report was due to personnel shortages, which resulted in a backlog of cases. Id. at 6. The BOP notified Jones that he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty calendar days of receiving the DHO report. Id. On June 20, 2020, Jones filed an administrative remedy request (that the incident report be expunged) with the Warden at FCI-Petersburg, which was rejected on June 23, 2020 because Jones had filed his appeal in the wrong office. Jones was informed he must submit his request to the Regional Administrator's Office. Id. at 9.

## II. Standard of Review

A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed declaration and portions of the disciplinary hearing record, his motion will be construed as one for summary judgment.[2]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

---

[2] In support of his Motion for Summary Judgment, Respondent submitted: (1) the Declaration of Jillian Anspach, DHO Secretary at FCC-Petersburg, (Dkt. No. 10-1); (2) an Incident Report (id. at 12-14); (3) a Notice of Discipline Hearing Before the DHO form (id. at 16); (4) an Inmate Rights at Discipline Hearing form (id. at 18); (5) a DHO Report (id. at 20-23); and (6) records of Jones' administrative remedy requests (id. at 25-29).

party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

To obtain habeas relief under § 2241, a petitioner must demonstrate that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner alleges the DHO violated his due process rights by failing to provide him with a copy of the DHO report in a timely fashion following the hearing. See Dkt. Nos. 1 at 5. Jones focuses his arguments on the BOP's delay in providing him the DHO report within the timeline articulated by the agency's rules and regulations negates

Jones opportunity to challenge the loss of telephone and commissary privileges. See Dkt. No. 13 at 1.

### A. BOP's Failure to Abide by its Regulations and Program Statements

Citing to BOP Program Statement 5270.09, petitioner argues that his due process rights were violated because the DHO's failure to provide him with the report in a timely manner prohibited him from being able to appeal the DHO's decision.[3] Petitioner's issue with BOP's failure to abide by its own internal rules, however, does not give rise to a legitimate claim for habeas relief. See Mendoza v. Tamez, 451 F. Appx 715, 717-18 (4th Cir. 2011) ("Prison regulations ... create liberty interests only when they protect inmates from atypical or significant hardship ... in relation to the ordinary incidents of prison life. Late notice of a disciplinary charge does not represent such a hardship.") (internal citation and quotations omitted); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."). Although it is undisputed that Jones did not receive the DHO report within the timeline articulated by BOP policies, this noncompliance, standing alone, does not constitute a violation of due process.

Moreover, the BOP delivered a copy of the DHO's report to petitioner on June 19, 2020 and informed Jones that he had twenty days to file his administrative appeal. Petitioner, therefore, received the relief to which he was entitled — a copy of the DHO report and the ability to appeal the DHO's decision. As courts have recognized, with respect to a claim that an inmate did not receive the DHO Report, such a claim is rendered moot if the inmate receives the report "after filing" an action. Shahan v. Ormond, No. 3:18cv200, 2018 U.S. Dist. LEXIS

---

[3] In pertinent part, Program Statement 5270.09 § 541.8(h) reads, "The DHO prepares a record of the proceedings. The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security. The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision."

214149, at *14-15 (E.D. Va. Dec. 19, 2018) (E.D. Va. Dec. 19, 2018), aff'd, 778 F. App'x 217 (4th Cir. 2019); see also Patterson v. Bolster, No. 3:18cv854, 2020 U.S. Dist. LEXIS 19857, *14 (E.D. Va. Jan. 31, 2020); Ogburn v. Bolster, No. 2:18cv691, 2019 U.S. Dist. LEXIS 161096, *28 (E.D. Va. Aug. 12, 2019), adopted by, 2019 U.S. Dist. LEXIS 161042 (E.D. Va. Sept. 18, 2019). Jones' claim has no merit.

In the context of an inmate's delayed receipt of a DHO's report, courts have held that inmates do not suffer any prejudice when they receive the report months after the hearing and that such a multi-month delay does not in and of itself constitute a due process violation. See, e.g., Griffin v. Ebbert, 640 F. Appx 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under Wolff"). Indeed, "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." Consolidation Coal Co. v. Borda, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). To be sure, Jones was not denied a right to appeal because once he received the DHO report, his window to appeal the DHO's findings opened.

*B. Good Time Credits*

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a due process claim is to identify whether the alleged conduct affects a protected interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005). Jones has a protected liberty interest in vested GCT, see, e.g., Sciolino v. City of Newport News, 480 F.3d

642, 653 n.9 (4th Cir. 2007), and is guaranteed the following amount of process when revocation of that GCT occurs:

> (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action.

Russell v. Wilson, No. 2:15cv51, 2015 U.S. Dist. LEXIS 95063, *13-14 (E.D. Va. June 17, 2015) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)), adopted by, No. 2:15cv51, 2015 U.S. Dist. LEXIS 94751, *1 (E.D. Va. July 20, 2015).

The record demonstrates, and Jones does not dispute, that Jones received notice of the DHO hearing and his rights on June 29, 2019, over a month before his hearing took place; that he did not seek to call any witnesses, and that he did not request the assistance of a staff member. The only evidence Jones presented at the hearing was his own admission that he used the cellphone. Jones makes no claim that the DHO was bias in any way, and he was given a written explanation in the form of the DHO report.

Due process also requires that some evidence must support "the decision by the prison disciplinary board to revoke" GCT. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) (emphasis supplied). Hill emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (citations omitted). The DHO's report is supported by substantial evidence, and therefore satisfies due process. Id. In sum, with regard to the recognized liberty interest in GCT, the record establishes Jones was not denied due process.

*C. Privileges*

As noted, in order to make out a due process claim, a claimant must "first establish that he had a property or liberty interest at stake." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002); see, e.g., Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464-65 (1989) (prisoners have no liberty interest in visitation privileges because regulations invest prison officials with absolute discretion in granting or denying the admittance of visitors). Due process protections attach only when an inmate is deprived of such a liberty interest. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005).

> "[The] range of interests protected by procedural due process is not infinite." Board of Regents v. Roth, supra, at 570. We have repeatedly rejected "the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." Meachum v. Fano, [427 U.S. 215, 224 (1976)]. Due process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment. And "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." Roth, supra, at 570-571.

Ingraham v. Wright, 430 U.S. 651, 672 (1977).

In Sandin v. Conner, 515 U.S. 472 (1995) the Court held that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id. at 484. The denial of privileges is a matter clearly contemplated by Jones' original sentence. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991), 946 F.2d at 343 (prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges").

It is well established that inmates do not have an absolute right to use a telephone. Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (finding that an involuntary transfer to a

8

higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); see Boriboune v. Litscher, 91 Fed. App'x 498, 500 (7th Cir. 2003) (loss of telephone privileges while in disciplinary segregation implicated no liberty interest and triggered no due process protection); Smith v. Roper, 12 F. App'x. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093 (2002) ("In light of Sandin, the deprivations that Smith suffered as a result of the disciplinary proceedings — namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges — do not implicate a liberty interest."); United States v. Alkire, 82 F.3d 411 (4th Cir. 1996) (table case) ("Alkire's complaint that the portion of the sentence restricting his use of a telephone while in prison is without merit; there is no constitutional or federal statutory right to use of a telephone while in prison."); see, e.g., Johnson v. Vroman, No. 1:06-cv-145, 2006 U.S. Dist. LEXIS 21021 (W.D. Mich. 2006) (finding that a six-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would warrant due process protection); Smart v. Goord, 441 F. Supp.2d 631, 640 (S.D.N.Y. 2006) (loss of phone, packages, and commissary privileges does not give rise to a protected liberty interest); see also Wright v. Shartle, 699 F. App'x 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"). Consequently, the inability to challenge the loss of telephone privileges is not a loss that would support a due process violation claim. Thus, plaintiff's loss of telephone privileges simply did not rise to a level deserving of constitutional protection.

    The same is true of petitioner's loss of commissary privileges. "When a prison provides for an inmate's basic necessities, he has 'no protected property or liberty interest in commissary privileges.'" Scott v. Burl, No. 5:16cv00327, 2018 U.S. Dist. LEXIS 41021, *20 (E.D. Ark. Feb. 5, 2018) (citations omitted).

> As other courts have recognized, suspension of a prisoner's commissary and telephone privileges does not rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Malchi v. Thaler, 211 F.3d 953, 958 ([5th Cir.] 2000) (recognizing that a 30 day loss of commissary privilege "clearly" does not implicate due process concerns); Thomas v. Ramos, 130 F.3d 754, 763 n.8 ([7th Cir.]1997) (finding no liberty interest in a loss of commissary privileges); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (same); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (same); Tanney v. Boles, 400 F. Supp. 2d 1027, 1040 (E.D. Mich. 2005 (finding that a temporary telephone privilege suspension does not implicate a due process liberty interest); Husbands v. McClellan, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) ("The temporary loss of the various privileges alleged in this case — i.e., telephone, package, commissary, and recreation privileges — does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate.").

Denson v. Bledsoe, No. 7:06-cv-00193, 2006 U.S. Dist. LEXIS 70988, *7-8 (W.D. Va. Sept. 29, 2006).[4] Accordingly, Jones loss of telephone and commissary privileges does not does not rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life and does not implicate due process concerns[5]

### IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 9] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this __18th__ day of __August__ 2020.

Alexandria, Virginia

*Claude M. Hilton*
US DJ

---

[4] See also Cato v. Watson, 212 Fed. Appx 258, 259-60 (5th Cir. 2006) (finding that inmates have no liberty interest in commissary privileges); French v. Butterworth, 614 F.2d 23, 24 (1st Cir. 1980) (finding that inmates do not have a constitutionally protected right to purchase commissary items at low prices).

[5] See also Jones v. Cross, 637 F.3d 841, 846 (7th Cir. 2011) (where inmate suffered no prejudice, "any conceivable due process violation was harmless.") (citing Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003)).

10